UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

**CIVIL ACTION NO. 05-51-DLB**

**DEAN BLACKBURN**                                                                           **PLAINTIFF**

vs.                     **MEMORANDUM OPINION & ORDER**

**JO ANNE B. BARNHART, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                             **DEFENDANT**

******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Dean Blackburn filed an application for a period of disability and disability insurance benefits (DIB) on November 29, 2001. His application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on October 18, 2002, in Prestonsburg, Kentucky. On January 30, 2003, ALJ James Kemper issued an unfavorable decision, finding that Plaintiff was not under a disability. The Appeals Council denied Plaintiff's request for further review by letter dated January 21, 2005. The ALJ's decision, therefore, stands as the final decision of the Commissioner on Plaintiff's claim.

Plaintiff, who was 43 years old at the time of the hearing, has a high school education as well as vocational training, and alleges an inability to work beginning on October 1, 2001, due to low back pain that radiates into his legs and feet, and right neck and shoulder pain. At the hearing before the ALJ, Plaintiff also indicated that he has problems with his nerves, suffers from sleep apnea, and was diagnosed with a hernia.

Having exhausted his administrative remedies, Plaintiff filed the instant suit on February 16, 2005. The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal

a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  (Tr. 15).  At Steps 2 and 3, the ALJ found that Plaintiff has severe impairments due to his back and hip impairments, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 16-18).  At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform medium level work.  (Tr. 21).  Specifically, the ALJ found that Plaintiff can lift/carry no more than 50 pounds occasionally, 25 pounds frequently; and can only occasionally climb and stoop.  (Tr. 21).

Based on these findings, the ALJ concluded that Plaintiff is unable to perform his past relevant work as a mechanical/dozer operator or welder/cutter.  (Tr. 21).  At Step 5, however, the ALJ found that there are a significant number of jobs Plaintiff can perform, including handpacker, food preparer, security guard, mail clerk, and office clerk.  (Tr. 22). This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.     Analysis**

In this appeal, Plaintiff's sole contention of error is that the ALJ erred by "acting as his own medical expert" in concluding, at Step 2, that he did not suffer from a severe mental impairment. In particular, Plaintiff argues that the state agency psychologist who completed a Psychiatric Review Technique Form (PRTF) did not have the benefit of his records from Mountain Comprehensive Care Center (MCCC). In response, the Commissioner agues that "[a]lthough Plaintiff asserts that the ALJ failed to give appropriate consideration to the records of MCCC, these records support the ALJ's conclusion that Plaintiff had no more than mild functional limitations as a result of his mental condition." (Doc. #5, p.7). For the reasons that follow, the Court concludes that, despite any alleged deficiency in the PRTF, the ALJ considered all the medical evidence and employed the proper standard in evaluating the severity of Plaintiff's alleged mental impairment.

Plaintiff's primary argument appears to be that the state agency psychologist, Dr. Ilze Sillers, did not have his treatment records from MCCC at the time she completed a PRTF indicating the absence of a medically determinable mental impairment. According to Plaintiff, it was improper for the ALJ to review the records and determine, for himself, that Plaintiff did not have a severe impairment. In support, Plaintiff relies solely on the Seventh Circuit's decision in *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000), which is not only factual distinguishable from the instant case, but also not binding on the Court.

The evidence in this case reveals that the ALJ complied with the "special procedure" prescribed by the regulations for evaluating a claimant's mental impairment, and incorporated his findings into his written decision. *See* 20 C.F.R. § 404.1520a. At Step 2, the ALJ noted that Plaintiff first sought treatment at MCCC in April 2002. Plaintiff reported being afraid to return to work after MRI results revealed degenerative disc disease, as well

4

as "nerve problems." (Tr. 227). He also complained of difficulty sleeping, increased appetite, fatigue, increased irritability, and occasional depression. (Tr. 227). A clinical social worker diagnosed Plaintiff with anxiety disorder, not otherwise specified, and dependent personality disorder. (Tr. 227).

Plaintiff attended therapy sessions at MCCC twice per month through September 2002. During a session on May 1, 2002, Plaintiff had a panic attack, exhibiting sweating, increased heart rate, shaking, and difficulty breathing. (Tr. 220). The social worker also observed anxious behavior during two subsequent sessions in June 2002. (Tr. 218-19). Generally, however, the treatment records from MCCC reveal that Plaintiff's primary complaints were physical in nature (i.e., his back pain), and his anxiety was, for the most part, related to his financial situation. With the help of the staff at MCCC, Plaintiff developed coping skills, such as breathing and other relaxation techniques, to alleviate his anxiety. This was evidenced by the fact that he reported no panic attacks during his July 25 session (Tr. 244), and subsequent treatment notes revealed that he appeared "in a good mood" (Tr. 243) and his affect was appropriate (Tr. 242-43).

The ALJ thoroughly reviewed Plaintiff's records from MCCC. The ALJ also noted that Plaintiff had not been seen by a treating psychiatrist, and was not taking any psychotropic medication. (Tr. 17). Finally, the ALJ rated Plaintiff's degree of functional limitation in the four areas identified in 20 C.F.R. § 404.1520a(c)(3). The ALJ found that Plaintiff experienced "no" limitations in his activities of daily living; "mild" limitations in social functioning; "mild" limitations in maintaining concentration, persistence, and pace; and "no" episodes of decompensation or deterioration. (Tr. 17-18). Based on these findings, the

5

ALJ properly concluded that Plaintiff's alleged mental impairment was not severe.  *See* 20 C.F.R. § 404.1520a(d)(1).

Based on the foregoing, the Court concludes that any alleged error relating to the ALJ's evaluation of Plaintiff's "nerve problem" is without merit.  Accordingly, the ALJ's denial decision is affirmed, as it is supported by substantial evidence.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #4) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #5) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 9th day of March, 2006.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-51-BlackburnMOO.wpd